# 14-967(L),

**14-1115(XAP)**

# United States Court of Appeals
## for the
## Second Circuit

———— ◆●◆ ————

SPANSKI ENTERPRISES, INC.,

*Plaintiff-Appellant-Cross-Appellee,*

– v. –

TELEWIZJA POLSKA S.A.,

*Defendant-Appellee-Cross-Appellant.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT-
## CROSS-APPELLEE

LOEB & LOEB LLP
*Attorneys for Plaintiff-Appellant-
    Cross-Appellee*
345 Park Avenue
New York, New York 10154
(212) 407-4000

## **CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, and to enable the Judges of the Court to evaluate possible disqualification or recusal, the undersigned counsel of record for Plaintiff-Appellant and Cross-Appellee Spanski Enterprises Inc. ("SEI") hereby submits this corporate disclosure statement. We certify that to the best of our knowledge and belief SEI does not have a corporate parent and no publicly held company owns an interest of ten percent or more in SEI.

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................... 1

STATEMENT OF JURISDICTION............................................ 5

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .............. 6

STATEMENT OF THE CASE

  I.   THE RELEVANT BACKGROUND FACTS ................................. 7

     A.  SEI Contracts with TVP for the Exclusive Right to Distribute *TVP Polonia* in the Territory ....................................... 7

     B.  The Prior Action and the Settlement Thereof............................ 9

     C.  TVP Improperly Licenses *TVP Polonia* Programming Content to SEI's Competitor ....................................... 11

     D.  TVP Removes the Long-Running Series *Klan* From *TVP Polonia* In Order to License it to Polvision ............................... 12

  II.  The Course of Proceedings and Disposition Below ......................... 17

     A.  The Relevant Claims.................................................. 17

     B.  The Arguments and Evidence Below ....................................... 17

       1.  SEI's First Claim:  TVP Breached the Agreements by Licensing *TVP Polonia* Programming to Polvision............. 18

       2.  SEI's Second Claim:  TVP Breached the Covenant of Good Faith and Fair Dealing by Removing *Klan* From *TVP Polonia* ...................................................... 20

     C.  The District Court's Ruling ....................................... 22

  III.  TVP Subsequently Attempts to Circumvent the Agreements by Removing Popular Shows From *TVP Polonia* and Distributing Them on a New Channel ................................................. 23

SUMMARY OF ARGUMENT

A.  The District Court Erred in Denying SEI Damages for Specific Episodes of *Klan* and *Plebania* That Had Not Appeared on *TVP Polonia* ........................................................................    24

B.  The District Court Erred in Denying SEI's Claim for Breach of the Covenant of Good Faith and Fair Dealing .............................    26

STANDARD OF REVIEW ........................................................................    29

ARGUMENT

I.  The District Court Erred in Excluding From Damages Specific Episodes of *Klan* and *Plebania* That Had Not Appeared on *TVP Polonia* ........................................................................    30

II.  The District Court Erred in Denying SEI's Claim For Breach of the Covenant of Good Faith and Fair Dealing .......................................    38

    A.  The District Court Erroneously Concluded That the Covenant of Good Faith and Fair Dealing Did Not Prevent TVP From Removing Programming From *TVP Polonia* in Order to Provide it to a Competitor ............................................................    40

    B.  The Evidence Demonstrates That SEI Removed *Klan* in Order to Placate Polvision, Not As Part of a Regular "Programming Review" ........................................................................    47

CONCLUSION ........................................................................    54

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. City of Bessemer City, N.C.*,
   470 U.S. 564 (1985)..................................................................48

*Aron v. Gillman*,
   309 N.Y. 157 (1955) ...............................................................35

*Bank of China v. Chan*,
   937 F.2d 780 (2d Cir. 1991) ...................................................39

*Bear, Stearns Funding, Inc. v. Interface Grp.—Nevada, Inc.*,
   361 F. Supp. 2d 283 (S.D.N.Y. 2005) ....................................39

*Carr v. Allison Gas Turbine Div., Gen'l Motors Corp.*,
   32 F.3d 1007 (7th Cir. 1994) (Posner, J.) ...............................49

*Carvel Corp. v. Diversified Mgmt. Grp., Inc.*,
   930 F.2d 228 (2d Cir. 1991) ...................................................43

*Ciampi v. City of Palo Alto*,
   790 F. Supp. 2d 1077 (N.D. Cal. 2011) ..................................52

*Collins v. Harrison-Bode*,
   303 F.3d 429 (2d Cir. 2002) ...................................................33

*Compagnie Financiere De Cic et de L'Union Europeenee v. Merrill
   Lynch, Pierce, Fenner & Smith Inc.*,
   232 F.3d 153 (2d Cir. 2000) (Sotomayor, J.)......................36, 38

*In re Delta Air Lines, Inc.*,
   608 F.3d 139 (2d Cir. 2010) ...................................................35

*Deutsche Alt-A Secs. Mortg. Loan Trust v. DB Structured Prods., Inc.*,
   958 F. Supp. 2d 488 (S.D.N.Y. 2013) .....................................36

*Diebold Found., Inc. v. Comm'r*,
   736 F.3d 172 (2d Cir. 2013) ...................................................29

*Doe v. Menefee*,
   391 F.3d 147 (2d Cir. 2004) (Sotomayor, J.) .................................... 49, 53

*Don King Prods., Inc. v. Douglas*,
   742 F. Supp. 741 (S.D.N.Y. 1990) ................................................. 40

*Dorset Indus., Inc. v. Unified Grocers, Inc.*,
   893 F. Supp. 2d 395 (E.D.N.Y. 2012) ............................................. 39, 44

*Eaves v. Designs for Finance, Inc.*,
   785 F. Supp. 2d 229 (S.D.N.Y. 2011) .............................................. 40

*Empresas Cablevision, S.A.B. de C.V. v. JP Morgan Chase Bank, N.A.*,
   680 F. Supp. 2d 625 (S.D.N.Y. 2010), *aff'd in relevant part and
   remanded on other grounds*, 381 F. App'x 117 (2d Cir. 2010) ........... 41

*Fishoff v. Coty Inc.*,
   634 F.3d 647 (2d Cir. 2010) ......................................................... 29, 39

*Gaia House Mezz. LLC v. State St. Bank & Trust Co.*,
   720 F.3d 84 (2d Cir. 2013) .......................................................... 42, 46

*Int'l Strategies Grp., Ltd. v. Ness*,
   645 F.3d 178 (2d Cir. 2011) .......................................................... 11

*JA Apparel Co. v. Abboud*,
   568 F.3d 390 (2d Cir. 2009) .......................................................... 32

*Kreisler v. Second Ave. Diner Corp.*,
   731 F.3d 184 (2d Cir. 2013) .......................................................... 29

*Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*,
   595 F.3d 458 (2d Cir. 2010) .......................................................... 32

*Leeward Constr. Co. v. Am. University of Antigua*,
   12 Civ. 6280, 2013 U.S. Dist. LEXIS 43550 (S.D.N.Y. Mar. 26,
   2013) .................................................................................... 39

*Mailer v. RKO Teleradio Pictures, Inc.*,
   332 F.2d 747 (2d Cir. 1964) .......................................................... 35

*Mar Oil, S.A. v. Morrissey*,
   982 F.2d 830 (2d Cir. 1993) .......................................................... 48

*Metzen v. United States*,
    19 F.3d 795 (2d Cir. 1994) ................................................................51

*Morgan Stanley Grp. Inc. v. New England Ins. Co.*,
    225 F.3d 270 (2d Cir. 2000) ..............................................................33

*NES Fin. Corp. v. JPMorgan Chase Bank, N.A.*,
    No. 13-7-cv, 556 F. App'x 12, 2014 U.S. App. LEXIS 3339 (2d Cir.
    Feb. 20, 2014) ...........................................................................29, 38

*New York v. Operation Rescue Nat'l*,
    273 F.3d 184 (2d Cir. 2001) ..............................................................48

*Nguyen v. Radient Pharms. Corp.*,
    946 F. Supp. 2d 1025 (C.D. Cal. 2013) .........................................51-52

*Polotti v. Flemming*,
    277 F.2d 864 (2d Cir. 1960) ..............................................................42

*In re: Rowanoak Corp.*,
    344 F.3d 126 (1st Cir. 2003) ..............................................................50

*Rowe v. Great Atl. & Pac. Tea Co.*,
    46 N.Y.2d 62 (1978) ..........................................................................39

*Southside Fair Housing Comm. v. City of New York*,
    928 F.2d 1336 (2d Cir. 1991) ............................................................48

*Tractebel Energy Mktg, Inc. v. AEP Power Mktg. Inc.*,
    487 F.3d 89 (2d Cir. 2007) ...........................................................27, 42

*Travellers Int'l, A.G. v. Trans World Airlines, Inc.*,
    41 F.3d 1570 (2d Cir. 1994) ......................................................*passim*

*United States v. Candelaria-Silva*,
    714 F.3d 651 (2d Cir. 2013) ..............................................................50

*United States v. Cerna*,
    603 F.3d 32 (2d Cir. 2010) ................................................................53

*Video Trip Corp. v. Lightning Video, Inc.*,
    866 F.2d 50 (2d Cir. 1989) ................................................................39

*VRG Linhas Aereas S.A. v. MatlinPatterson Global Opportunities Partners II*, 717 F.3d 322 (2d Cir. 2013)...............................................29

**Rules**

Federal Rule of Civil Procedure 902(6).......................................................51

**Other Authorities**

*Restatement (Second) of Contracts* § 205, illus. 1 (1981) ......................................... 40

# INTRODUCTION

This action involves just one in a long line of attempts by Defendant-Appellee Telewizja Polska S.A. ("TVP") to improperly terminate, circumvent or sidestep a long-term, exclusive distribution agreement that it entered into with Plaintiff-Appellant SEI in 1994. Pursuant to that 1994 agreement, and subsequent amendments, TVP (the Polish public broadcasting corporation, and an instrumentality of the Polish government) granted SEI the exclusive, long-term right to distribute *TVP Polonia*—an international channel featuring the "best of" TVP's domestic Polish programming—and the programming thereon in North and South America.

For the first years of the contract, when SEI was investing (and at first losing) money, and was building the brand in North America, TVP liked the agreement (and even expanded the agreement by adding an additional channel, *TVP Info*, in 2002). However, TVP has sought to evade its contractual commitments since approximately 2006, when TVP's management unilaterally decided that the twelve-year old agreement was "too favorable" to SEI, threatened to bypass the agreement by distributing *TVP Polonia* programming on another channel, and improperly attempted to terminate the agreement. After years of litigation, in August, 2009, SEI and TVP entered into a settlement agreement that confirmed SEI's exclusive right to distribute *TVP Polonia* programming content within SEI's exclusive territory. Among other things, pursuant to the settlement agreement, TVP agreed not to distribute on any

other channels in the territory "any of the same programming that is contained, has been contained, or will be contained" in *TVP Polonia*.

Nevertheless, shortly after entering into the settlement agreement, TVP entered into a license agreement with TV Polvision ("Polvision"), a competitor of SEI's in Chicago, which purported to authorize Polvision to broadcast a number of long-running *TVP Polonia* television series, including but not limited to the series *Klan* and *Plebania*. TVP subsequently realized that this violated the Settlement Agreement, and attempted to "cure" its contractual breach by simultaneously attempting to unilaterally terminate the Polvision license, and offering to replace the *TVP Polonia* content licensed to Polvision with alternative content. When these efforts failed—with Polvision repeatedly threatening to sue TVP if it did not provide it with the programming that it promised—TVP responded by removing the long-running, popular television series *Klan* from *TVP Polonia*, and offering to license new episodes of that series exclusively to Polvision, thus compounding its initial breach of its Agreement with SEI. With new episodes of the *TVP Polonia* series *Klan* included in TVP's offer of replacement programming, TVP and Polvision resolved their dispute.

SEI sued TVP, claiming, *inter alia*, (i) that TVP breached the parties' agreements by licensing *TVP Polonia* programming to Polvision, and (ii) that TVP breached the agreements and the covenant of good faith and fair dealing implied therein by removing *Klan* from *TVP Polonia* in order to license the series to

Polvision.  Following a bench trial, the District Court agreed that TVP had breached the parties' agreements by licensing certain programs to Polvision; however, in determining damages for SEI's breach of contract claim, the District Court excluded 408 specific episodes of the programs *Klan* and *Plebania* that had never aired on *TVP Polonia*.  The District Court offered no explanation or reasoning for its apparent determination that specific episodes were outside the scope of the agreements if those particular episodes never aired on *TVP Polonia*, notwithstanding that they were part of long-running *TVP Polonia* series.  However, to have reached this result, the District Court must have implicitly concluded that the settlement agreement's prohibition on TVP's licensing of "**any of the same programming**" that had ever appeared on *TVP Polonia* applied only to specific episodes of *TVP Polonia* programs, rather than the programs, or series, in their entirety.

This implicit conclusion was incorrect.  The term television "programming," and its root "program," are commonly understood to refer to entire <u>series</u>, not individual episodes thereof.  Accordingly, the settlement agreement is properly understood as barring TVP from distributing via alternate channels any television <u>series</u> that have aired on *TVP Polonia*, and any episodes thereof, regardless of whether the particular episodes have aired on *TVP Polonia*.  And even if the settlement is ambiguous with respect to whether the term "programming" encompasses *TVP Polonia* series in their entirety, or only specific episodes thereof, the District Court made <u>no</u> factual findings concerning the proper interpretation of the

3

term, and there is simply <u>no</u> extrinsic evidence in the record supporting the District

Court's apparent assumption that the term "programming" refers to individual

episodes rather than series.  To the contrary, <u>all</u> of the extrinsic evidence supports that

the settlement agreement bars TVP from distributing <u>any</u> episodes of *TVP Polonia*

series in SEI's exclusive territory, even if the specific episodes had not aired on *TVP*

*Polonia*.  Indeed, as TVP itself has acknowledged, one of the primary specific

purposes of the settlement agreement was to prevent TVP from circumventing or

bypassing SEI's exclusive rights by distributing *TVP Polonia* programming content

under a different name, thus competing with SEI using *TVP Polonia* programming.

This primary purpose would be completely thwarted if TVP could circumvent SEI's

exclusive rights through the simple expedient of removing popular series from *TVP*

*Polonia* for the sole purpose of moving new episodes of those series to a competing

channel.

The District Court compounded its error by holding that TVP's removal of

*Klan* from *TVP Polonia* in order to license the series to Polvision did not violate the

covenant of good faith and fair dealing implied in every contract, which precludes

TVP from taking actions designed to injure SEI's rights to receive the fruits of the

parties' contract.  Indeed, TVP's conduct—removing a popular *TVP Polonia* program

for the sole purpose of ostensibly rendering it "non-*TVP Polonia* programming" that

can be broadcast on a competing channel—is precisely the type of chicanery that the

covenant of good faith is designed to prevent.  Nevertheless, the District Court

incorrectly held that motive is irrelevant to determining whether a party has breached the covenant of good faith, and further held that TVP's conduct did not violate SEI's reasonable expectations. Both of these conclusions are incorrect as a matter of law, and require that the District Court's dismissal of SEI's "good faith and fair dealing" claim be reversed.

Perhaps the clearest illustration that the District Court's rulings were in error is the use that TVP now seeks to make of those rulings. In the wake of the District Court's decision, TVP has multiplied its efforts to circumvent its Agreement with SEI, publicly announcing plans to remove almost all of the most popular television series from *TVP Polonia* in order to include them on a new international channel that will be launched by TVP in SEI's exclusive territory. According to TVP, this conduct—which completely undermines the very purpose of the settlement agreement—is perfectly permissible in light of the District Court's decision. In fact, however, both the express language of the parties' agreements and the covenant of good faith and fair dealing prohibit TVP from distributing new episodes of long-standing *TVP Polonia* series on competing channels, and the District Court's rulings to the contrary must be reversed.

## <u>STATEMENT OF JURISDICTION</u>

The District Court exercised jurisdiction over this case under either 28 U.S.C. § 1332(a), because there was complete diversity of citizenship between the parties and the amount in controversy exceeded $75,000, or pursuant to the Foreign Sovereign

Immunities Act, 28 U.S.C. §§ 1330, 1603, to the extent Defendant-Appellant

Telewizja Polska S.A. ("TVP") is an agency or instrumentality of a foreign state.

This Court has jurisdiction under 28 U.S.C. § 1291 because the District Court

issued a final order disposing of all of the parties claims.  (SPA-1—24; SPA-25—26).

Plaintiff-Appellee SEI filed a timely Notice of Appeal.  (A-3193).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Did the District Court err in excluding from its award of damages to SEI

   damages resulting from TVP's authorizing a third party to distribute certain

   episodes of the television series *Klan* and *Plebania* in SEI's exclusive territory,

   despite contractual language prohibiting TVP from authorizing the distribution

   on any channels other than *TVP Polonia* of "any of the same programming that

   is contained, has been contained, or will be contained in . . . *TV[P] Polonia*,"

   where *Klan* and *Plebania* were long-running *TVP Polonia* television series, but

   the specific episodes in question never aired on *TVP Polonia*.

2. Did the District Court err in concluding that TVP did not breach the covenant

   of good faith and fair dealing inherent in every contract by removing the long-

   running television program *Klan* from *TVP Polonia* in order to license future

   episodes of the program to a third party; and, relatedly:

   a. Whether the District Court erred as a matter of law by concluding that

      the removal of *Klan* from *TVP Polonia* for purposes of licensing the

      program to a third party did not violate SEI's reasonable expectations

6

under the parties' agreements, or that TVP's motive in removing *Klan*

from *TVP Polonia* was irrelevant; and

b.  Whether the District Court erred in accepting TVP's contention that it

removed *Klan* as part of a "regular quarterly programming review" due

to purportedly "declining viewership."

## STATEMENT OF THE CASE

## I.    THE RELEVANT BACKGROUND FACTS

### A.    SEI Contracts with TVP for the Exclusive Right to Distribute *TVP Polonia* in the Territory

SEI is a Canadian corporation that distributes Polish-language television

content in North and South America via satellite and cable television and over the

Internet.  (A-59, ¶1).  Defendant Telewizja Polska, S.A. ("TVP") is a business

corporation organized under the laws of Poland (and is wholly-owned by the Polish

government), which owns and operates Polish-language television channels,

including the channel *TVP Polonia* (f/k/a *TV Polonia*).  (A-59, ¶2).

*TVP Polonia* is an international channel, created pursuant to Poland's

Broadcasting Act of 1992.  The Broadcasting Act requires TVP to disseminate,

through *TVP Polonia*, a collection of the most popular shows from its domestic

Polish channels to the broadest possible audience of the large diaspora of Poles living

abroad.  (A-149, ¶¶18-19; A-715—16; A-2372).  Accordingly, *TVP Polonia* is

intended to contain the "best-of" and "most popular" programming from *TVP*'s

domestic Polish channels, including its flagship channels in Poland, *TVP1* and *TVP2*. (A-59, ¶4; A-80—81, ¶25; A-149, ¶19;  A-690, A-715—16; A-2372).

On December 14, 1994, TVP and SEI entered into a written agreement (the "Agreement"), pursuant to which TVP granted SEI the exclusive right to broadcast the programming of *TVP Polonia* in North and South America (the "Territory") for an initial period of 25 years.  (A-59, ¶3; A-956—57, A-960, §§1(c), 2, 10).  During negotiations leading up to the Agreement, TVP's representatives advised Boguslaw M. Spanski, SEI's owner, that TVP did not wish to incur any of the necessary costs and expenses related to the transmission of the *TVP Polonia* signal into North America, viewing the project as a high-risk venture.  Accordingly, the Agreement provided that SEI would bear all of the cost of transmitting the television signal into North America and marketing and distributing the channel.  In exchange, SEI received long-term exclusive distribution rights in the territory, with SEI paying to TVP a royalty of eight percent (8%) of gross revenues derived from *TVP Polonia* programming.  (A101—04, ¶¶ 9-16; A-958—59, §§ 4(3), 6).  In addition, the Agreement provided that TVP reserved the right to "introduce changes" to *TVP Polonia* programming, but only so long as the "general character" of *TVP Polonia* is retained.  (A-960, §9.4)

Following litigation between the parties, which is described in greater detail *infra* at 9-11, on August 11, 2009, SEI and TVP entered into a written settlement agreement (the "Settlement Agreement," together with the Agreement and

addendums thereto, the "Agreements"), which confirmed SEI's exclusive right to distribute *TVP Polonia* programming content.  (A-60, ¶¶11-12)**.**  The Settlement Agreement expressly provides that "SEI is and shall remain the exclusive distributor of *TV Polonia* . . . programming content in the territory of North and South America by any and all means of distribution [subject to a "sole exception" not relevant to this action]."  (A-60, ¶12; A-973, §II.A)．  The Settlement Agreement also unambiguously provides that:

> TVP shall not distribute or offer to distribute, or permit the distribution of any other channels in North and South America that contain any of the same programming that <u>is contained, has been contained, or will be contained</u> in . . . *TV Polonia* . . . .

(A-973, §II.E) (emphasis added).

### B.  <u>The Prior Action and the Settlement Thereof</u>

As SEI's efforts to exploit *TVP Polonia* became more successful—and only after SEI had paid all of the expenses necessary to transmit the *TVP Polonia* signal to North America, and spent years to develop the market for and distribute the channel in the Territory—TVP and its representatives began to express their view that the parties' contractual relationship was "too favorable" to SEI, and sought to terminate, renegotiate, or "break" TVP's contractual agreements with SEI.  (A-110, ¶¶31, 32).  In furtherance of these efforts, in 2006 TVP initiated an arbitration in Warsaw seeking to have the Agreement declared void.  (*Id.* ¶33; A-60, ¶10).  Because the parties had contractually agreed to litigate their disputes in federal district courts

sitting in New York (A-60, ¶8;  A-970, §8), SEI initiated an action in the Southern

District (the "Prior Action," *Spanski Enterprises, Inc. et al. v. Telewizja Polska S.A.,*

*et al.*, 07 Civ. 930 (S.D.N.Y.)) seeking, *inter alia*, both to enjoin the improper

Warsaw arbitration proceeding (which the Court did) and declaratory relief

concerning its own contractual rights.  (A-60, ¶10; A-111, ¶¶34-35).

     After several  years of time-consuming and expensive litigation, the parties

settled the Prior Action by entering into the Settlement Agreement (A-60, ¶11; A-

111, ¶¶36-37), which was negotiated by Boguslaw Spanski, on behalf of SEI, and

Piotr Lenarczyk (director of TVP's Programming Acquisitions, Sales and

International Affairs Department) on behalf of TVP.  (A-93—94, ¶¶1-3; A-111, ¶38,

A-113, ¶43; A-265, p. 39:24-41:2; *see also* A-62).  As set forth *supra* at 9, the

Settlement Agreement confirmed and clarified SEI's exclusive rights to distribute

*TVP Polonia* programming content in the Territory, and expressly prohibited TVP

from permitting the distribution on any other channel in the Territory of "any of the

same programming that is contained, has been contained or will be contained" in *TVP*

*Polonia*.

     Among other things, these provisions were designed to preclude TVP from

attempting to circumvent SEI's exclusive rights to "*TVP Polonia*" by distributing

*TVP Polonia* programming under a different name, thus competing with SEI using

*TVP Polonia*'s own programming.  (A-215—16, p. 85:17-88:16; *see also* A-66).

Indeed, TVP itself has acknowledged this intent, repeatedly stating in connection

with a related action currently on appeal before this Court that Section II.E of the Settlement Agreement prevents TVP from "bypassing" SEI's exclusive rights in *TVP Polonia* by permitting the distribution of "compet[ing]" channels with *TVP Polonia* programming content.  *See Telewizja Polska S.A. v. Spanski Enterprises*, Case 13-4134-cv (2d Cir.), Dkt. No. 30, pp. 5, 15, 18; *see also id.* at 26 ("The overriding purpose of the 2009 Settlement Agreement is to insulate SEI from competition by preserving its exclusive right to distribute *TVP Polonia*.").[1]

### C. TVP Improperly Licenses *TVP Polonia* Programming Content to SEI's Competitor

In March and June 2008—prior to execution of the Settlement Agreement, and unbeknownst to SEI—TVP entered into license agreements with TV Polvision ("Polvision"), a competitor of SEI in Chicago (one of the largest Polish-American markets in the United States), whereby TVP authorized Polvision to broadcast certain *TVP Polonia* programming content.  (A-61, ¶¶15, 16; A-98—99, A-105—06, A-112—13 ¶¶ 2, 20, 42-43).  Subsequently, on August 31, 2009—just weeks after entering into the Settlement Agreement—TVP entered into another license agreement with Polvision (the "Polvision License"), which purported to provide the Polvision channel with a number of long-running *TVP Polonia* serial television programs,

---

[1] SEI respectfully requests that the Court take judicial notice of TVP's statements made in its filings in other litigations between the parties. *See Int'l Strategies Grp., Ltd. v. Ness*, 645 F.3d 178, 180 (2d Cir. 2011) (taking judicial notice of filings from other, related lawsuits involving the plaintiff).

including individual episodes of the programs *Plebania*, *Klan*, *Na Dobre I na Zle*, and *Zlotopolscy*.   (A-59 & A-61, ¶¶4, 17; A-112, ¶42; A-1007).

TVP quickly recognized that the August 31, 2009 Polvision License breached SEI's exclusive rights to *TVP Polonia* programming (A-96—97, ¶¶11-13); accordingly, the very next day, TVP sent an email to Polvision stating that the Settlement Agreement ""somewhat complicate[s] our cooperation, because [SEI is] granted exclusive rights to material, which has been and will be broadcast by TVP POLONIA," and instructing Polvision "to contact Mr. Spanski to get his consent to broadcasting . . . episodes of the series [*Plebania; Klan; Na Dobre I na Zle;* and *Zlotopolscy*]") (A-1010).[2]  Polvision refused, stating that its agreement was with TVP, and indicating that it intended to broadcast the licensed episodes.  (*Id.*; *see also* A-153—54, ¶47).

### D. <u>TVP Removes the Long-Running Series *Klan* From *TVP Polonia* In Order to License it to Polvision</u>

TVP did not inform SEI that it had licensed SEI's exclusive programming to Polvision. (A-113—15, ¶¶43-48).[3]  Instead, TVP attempted to "cure" its contractual

---

[2] *See also* A-1012 (TVP informs Polvision on November 28, 2009 that, due to TVP's recent agreement with SEI, Polvision must cease carrying the programs in question); A-1014 (same); A-1042 (internal TVP memorandum stating that "the series presently aired by Polvision; "*Klan*", *Zlotopolscy*", "*Plebania*", and "*Na dobre I na zle*", in light of the settlement agreement entered into between TVP and the company Spanski Enterprises SEI violates solely the rights of that company").

[3] SEI first learned of the purported license between TVP and Polvision around January 2010, after SEI itself (through its counsel) sent a cease and desist letter directly to Polvision.  (A-115, ¶48).

breach by alternatively attempting to unilaterally terminate the Polvision License, offering to replace the *TVP Polonia* content licensed to Polvision with other content, and, when these efforts failed, by removing the highly popular series *Klan* from *TVP Polonia* so that new episodes of *Klan* could be licensed to Polvision.

Beginning on or around November 28, 2009, TVP had numerous written and over-the-phone discussions with Polvision in which it requested that Polvision cease distributing *TVP Polonia* programming, including the serials *Klan*, *Na dobre I na zle*, *Plebania* and *Zlotopolscy*.  (A-97, ¶13; A-154, ¶¶49-52; A-1012; A-1014; A-1017).  On November 30, 2009, TVP informed Polvision that, because of the Settlement Agreement, it was forced to "rescind" its licensing agreement with Polvision.  (A-154, ¶50; A-2182).  And on January 25, 2010, TVP purported to "terminate" its agreement with Polvision (A-1020), which Polvision rejected.  (A-1022).

Simultaneously, TVP attempted to placate Polvision by offering it alternate programming that had not aired on *TVP Polonia*.  Between October 2009 and January 2010, TVP made numerous offers of such replacement programming to TVP.  (A-154, ¶¶ 49-52; A-2176; A-2185; A-2192; A-2195).  However, on February 23, 2010, Polvision rejected TVP's offers of replacement content, stated that it would hold TVP to its obligations under the licensing agreement, and threatened to sue TVP if TVP did not comply.  (A-155, ¶53; A-2198).

In April 2010, Maria Nadolna—TVP's sole fact witness during the trial below (*see infra* at 19)—requested that the director of *TVP Polonia* withhold certain series

13

from *TVP Polonia* during the term of the Polvision License so that such series could be offered to Polvision as replacement programming. (A-155, ¶ 54; A-685—86, p. 150:4-151:21; A-1029; A-2203 (TVP has provided "a list of premiere series, the broadcasting of which . . . will be withheld from the TVP Polonia antenna for the duration of the license in Polvision")). However, after receiving a legal opinion on the matter, Nadolna revoked this request. (A-1034).

On May 5, 13 and 17, 2010, TVP sent letters to Polvision asking it to respond to TVP's offer of replacement programming, and demanding that it stop broadcasting *TVP Polonia* series (including *Klan* and *Plebania*) and return all episodes of such series to TVP. (A-155, ¶¶ 55-56; A-2208; A-2214; A-2217; A-1040). Polvision refused, and again threatened to sue TVP. (A-155, ¶56; A-2220).

On May 18, 2010, Nadolna sent an internal memorandum to the president of TVP, stating that TVP had "carefully analyzed the possibilities of changing the content" to be provided to Polvision to content "that has not been, is not, and shall not be relayed on TV Polonia." (A-1042). Nadolna expressed that one possibility that had been considered was "blocking" the series that were the subject of the August 31, 2009 license agreement from *TVP Polonia* "for the time of duration of the agreement with SEI (around ten years)," but noted that this "was not possible in practice due to the long-term program plans of TV Polonia." (*Id.*). In the alternative, Nadolna proposed "supplying Polvision with other series," which would similarly be

"blocked" from *TVP Polonia* for the duration of the Settlement Agreement. (A-1042—1043).

In the meantime, TVP continued to (unsuccessfully) demand that Polvision refrain from airing and return episodes of the *TVP Polonia* programs, including *Klan*. On May 18, June 8, June 14 and June 25, 2010, TVP again requested that Polvision accept replacement programming, cease and desist all broadcasting of *Klan*, *Na dobre I na zle*, *Plebania* and *Zlotopolscy*, and return all episodes of such programs in its possession to TVP. (A-155, ¶¶57-58; A-2223; A-2232; A-2235; A-2238). The June 25, 2010 letter was sent the day after SEI filed its original complaint in this action. (A-14). Polvision either rejected or failed to respond to each of these requests. (A-155, ¶¶57-58).

On June 30, 2010, TVP and Polvision reached a preliminary agreement on replacement programming content. The next day, TVP sent Polvision a letter proposing to license Polvision new episodes of nine television series—not including *Klan* or *Plebania*—that had already been broadcast (or would soon be broadcast) in Poland, but that would be withheld from the international *TVP Polonia* channel in favor of Polvision. (A-155—56, ¶59; A-2241). On July 8, TVP sent another letter to Polvision, which contained a proposed list of television series to be offered to Polvision—for the first time, the proposed "replacement" series included the television programs *Klan* (episodes 1891-2123) and *Plebania* (episodes 713-899). (A-155—56, ¶59; A-2251).

On July 16, 2010, Polvision and TVP entered into an amendment to the Polvision License (the "Polvision Amendment") by which TVP licensed to Polvision, *inter alia*, the newest episodes of *Klan* (episodes 1891-2113), and certain episodes of *Plebania* (episodes 713 to 899).  (A-156, ¶60; A-2260, A-2264).[4]  Notably, this critical document was never even produced by TVP in this action, and was only obtained by subpoena from Polvision.  (A-119, ¶56; A-3130).

*Klan* had aired continuously on *TVP Polonia* from at least February 1998 through June 6, 2010.  During that time, *TVP Polonia* carried episodes 1-1890 of the long-running serial program, episodes which were originally broadcast on TVP1, TVP's flagship station in Poland.  (A-118—19, ¶¶54-55; A-151, ¶¶31, 33-34;  A-2383, A-2456, A-2530-60).  In the fall of 2010, *Klan* was removed from *TVP Polonia* (A-91, ¶99; A-2384), though TVP continues to produce new episodes of the serial program, from episode 1891 onwards, and such episodes continue to be carried on TVP's flagship station in Poland (and, of course, Polvision).  These new episodes continue to garner high ratings on TVP's flagship domestic channel.  (A-796—98, p. 261:25-263:8; A-1999 (June 3, 2013 article stating "The average audience of '[K]lan' from September 3, 2012 to May 30, 2013 was 2,710,000 and TVP1's share was 23.11% of all viewers and 15.42% in the commercial group aged 16-49, according to

---

[4] Unlike *Klan*, which *TVP* removed from *TVP Polonia* after entering into its July 16, 2010 amendment with Polvision, new episodes of *Plebania* continue to air on *TVP Polonia*.  (*See* A-2456) (noting that episodes 1320-1509 of *Plebania* aired on *TVP Polonia* between September 2009 and August 2010).

data from Nielsen Audience Measurement . . . .  The telenovela aired on [TVP1]

Mondays through Fridays at 5:50 p.m.")).

II.   **The Course of Proceedings and Disposition Below**

   A. **The Relevant Claims**

     SEI's October 1, 2010 Amended Complaint asserted three claims for relief,

only two of which are at issue on this appeal.  First, SEI alleged that TVP breached

the Agreements by licensing certain *TVP Polonia* programming to Polvision,

including but not limited to the programs *Plebania*, *Klan*, *Na Dobre I na Zle* and *M

jak Milosc*.   (A-24 & A-26—27, ¶¶16, 31-38).  Second, SEI asserted that TVP

breached the Agreements, and the covenant of good faith and fair dealing implied

therein, by "removing the long-running and popular television series *Klan* from

[*TVP*] *Polonia* for the purpose of licensing and distributing this very same

programming content to SEI's direct competitor for distribution in the Territory."

(A-28, ¶45).[5]

   B. **The Arguments and Evidence Below**

---

[5]  SEI also claimed that TVP breached the First Addendum by failing to provide litigation support to SEI in blocking violations of SEI's exclusive distribution rights. In addition, TVP filed a counterclaim alleging that SEI failed to use reasonable efforts to maximize subscribers for the distributions of *TVP Polonia* and *TVP Info* (another channel to which SEI had exclusive rights, for a time).  The District Court rejected each of these claims (SPA-2, SPA-17—19, SPA-22—23), neither of which are at issue on this appeal.

A bench trial was held from July 22 to July 25, 2013.  Direct testimony of the parties' various witnesses was given by declaration, with the witnesses made available for in-person cross-examination.  (A-55).  In addition to witness testimony, also before the Court were the parties' Stipulated Facts and Law  (A-55, A-59—61), deposition designations (A-57, A-62—67), and exhibits (A-57, A-68—75), as well as the parties' respective post-trial memoranda and proposed findings of fact and conclusions of law. (A-125; A-142; A-3117; A-3156).

### 1. SEI's First Claim:  TVP Breached the Agreements by Licensing *TVP Polonia* Programming to Polvision

SEI argued below that the plain language of the Agreements and the uncontroverted evidence adduced at trial establish that SEI "has always held the exclusive distribution rights to *TVP Polonia* as well as its individual programming content."  (A-3140; *see also* A-129—31, ¶¶16-24).  SEI also argued that, so long as episodes of a television series had aired on *TVP Polonia*, the entire series constituted *TVP Polonia* "programming content" to which SEI had exclusive rights.  A-3146 (noting that many of the 545 episodes subject to the July, 2010 agreement between Polvision and TVP were "long-running *TVP Polonia* series (such as *Klan* and *Plebania* . . .), A-3147 ("[T]he series *Klan*, one of the most popular and longest running program series on the *TVP Polonia* channel, was *TVP Polonia* programming content exclusively licensed to SEI.") A-3148 ("*Klan* had been on TVP Polonia continuously since the mid-1990s, and merely removing some episodes from TVP

Polonia did not miraculously turn *Klan* into a non-TVP Polonia program.")).

Accordingly, SEI sought damages in connection with all programs that TVP had

licensed to Polvision, including in connection with individual episodes of the

programs *Klan* and *Plebania* that did not air on *TVP Polonia*.  (*See, e.g.,* A-3146—

47; A-1652—56, ¶¶54-63).

In support of its claims, SEI presented, *inter alia*, the direct testimony of SEI's

owner Boguslaw Spanski, whose declaration detailed, among other things, the history

of negotiations underlying the Agreement and the Settlement Agreement (A-98—

112, ¶¶1-41), and Piotr Lenarczyk, the former TVP director who negotiated the

Settlement Agreement with Spanski , who testified that he and others at TVP realized

that the licensing of *TVP Polonia* programming to Polvision was a mistake and in

breach of SEI's contractual exclusivity, and thus instructed Polvision to immediately

cease the broadcast of, *inter alia*, *Plebania* and *Klan*.  (A-93—94, A-96—97, ¶¶1-3,

10-13).  TVP elected not to cross-examine either Spanski or Lenarczyk during the

trial.

TVP's sole fact witness was Maria Nadolna, a former TVP employee.  (A-76).

Nadolna acknowledged that she played no role in negotiating either the Agreement or

the Settlement Agreement, and confirmed that Lenarczyk was responsible for

negotiating the Settlement Agreement on behalf of TVP.  (A-631; A-262  p. 29:20-

23,  A-265, p. 39:24-41:2; *see also* A-62).  Despite failing to present the testimony of

anyone involved in negotiating the Agreements, TVP argued that the Agreements

only gave SEI

> the right to distribute the *TVP Polonia* channel as a unit of programming
> within the Territory, in the same form as the channel is broadcast in Poland
> by TVP.  However, the contracts do not give SEI distribution exclusivity to
> individual programs or series broadcast on *TVP Polonia*.

(A-146, ¶4).  In other words, TVP argued that it was free to license individual shows

and series to competing channels, even if those shows and/or series appeared on *TVP

Polonia*, so long as it did not license to any other channel the <u>entire</u> content of *TVP

Polonia*.

### 2.  <u>SEI's Second Claim:  TVP Breached the Covenant of Good Faith and Fair Dealing by Removing *Klan* From *TVP Polonia*</u>

In support of its claim that TVP breached its implied covenant of good faith

and fair dealing, SEI relied on the documentary evidence, set forth *supra* at 12-16,

establishing that TVP removed *Klan* from *TVP Polonia* in order to license it to

Polvision.

Notwithstanding such documentary evidence, TVP's witness, Maria Nadolna,

asserted in her declaration that TVP's decision to remove *Klan* had nothing to do with

Polvision, and was made in May 2010 as part of an ordinary "programming review"

due to declining ratings in Poland.  (A-90—91, ¶¶93-99).  However, <u>TVP did not

produce a single document</u>, during discovery or at trial, reflecting any purported

decision to remove *Klan* in May 2010, as part of an ordinary "programming review"

or otherwise, even though SEI repeatedly requested any such documents during discovery.  (A-34, Req. No. 10; A-47—48, Req.  No. 6).

The only documentary "evidence" that TVP presented in support of its defense that *Klan* was removed due to low ratings was an undated chart—which was not produced during discovery and was apparently prepared in connection with the litigation—that purports to show that *Klan* had low ratings on the *TVP Polonia* channel <u>in Poland</u>.  (A-91, ¶99; A-2320; *see also* A-806—07).  However, even accepting its authenticity, this exhibit is entirely irrelevant and misleading.  *TVP Polonia* is an international channel, aimed at Poles living abroad (and not domestic Polish audiences), which rebroadcasts programming that initially airs on TVP's domestic Polish channels.  (*See supra* at 7-8).  Within Poland, viewers watch first-run episodes of series such as *Klan* on TVP's flagship domestic channels long before they appear on *TVP Polonia*.  In fact, in the course of a new litigation between the parties (described *infra* at 23-24), TVP has expressly acknowledged that series that are highly popular on TVP's domestic channels do <u>not</u> receive high ratings within Poland on *TVP Polonia*, because "by the time these series appear on *TVP Polonia* in Poland, they have already been broadcast on TVP's free-to-air domestic channels four or five times."  (*See Spanski Enterprises, Inc. et al. v. Telewizja Polska S.A.,* Case 1:14-cv-2570-KBF (S.D.N.Y.) (hereinafter, the "*TVP Entertainment* Action),  Dkt. No. 22, Declaration of *TVP Polonia* director Lukasz Kardas ¶ 88, *see also id.* ¶32, 57).

Accordingly, TVP's exhibit says nothing about the popularity of *Klan* within Poland, much less among *TVP Polonia*'s targeted international audience.[6]

## C. **The District Court's Ruling**

On March 6, 2014, the District Court issued its Final Order. The District Court held in SEI's favor on its claim that TVP breached the parties' Agreements by licensing certain programs to Polvision, holding that "the Settlement Agreement, which is clear and unambiguous on its face, gives SEI exclusive distribution rights to the individual shows comprising *TVP Polonia*," and that, even if the agreements were found to be ambiguous, "the extrinsic evidence presented by the parties reinforces the conclusion that SEI's distribution exclusivity applies to the individual programs of *TVP Polonia*." (SPA-5, SPA-8). However, in determining damages for SEI's breach of contract claim, the District Court excluded 408 specific episodes of *Klan* and *Plebania* that had never aired on *TVP Polonia*, stating that these episodes "were never part of *TVP Polonia* programming content," (SPA-11—12), notwithstanding that the series *Klan* and *Plebania* had aired on *TVP Polonia* for years.

The District Court denied SEI's claim that TVP breached the covenant of good faith and fair dealing by removing *Klan* from *TVP Polonia* in order to license the series to Polvision, holding that TVP's removal of *Klan* "was neither a direct violation of the parties' agreements nor a violation of what SEI could have

---

[6] TVP did not produce any documents during discovery concerning *TVP Polonia*'s international ratings, or the ratings for *TVP Polonia* programming on TVP's domestic channels.

reasonably expected," "the fact that TVP later sold the extracted episodes of *Klan* to Polvision is of no consequence," and that "[e]ven presuming TVP's motives for removing *Klan* were retaliatory in nature, courts have found the implied covenant regulates the parties' conduct, not their motives." (SPA-21—22). The District Court also stated that "TVP presented evidence that the decision to remove *Klan* was part of a regular quarterly programming review . . . because *Klan* had declining viewership in Poland among a target audience." (*Id.* at SPA-21).

III.    **TVP Subsequently Attempts to Circumvent the Agreements by Removing Popular Shows From *TVP Polonia* and Distributing Them on a New Channel**

In the wake of the District Court's decision, TVP has multiplied its efforts to circumvent the parties' Agreements by removing popular programming from *TVP Polonia* in order to distribute it on a "new" channel within SEI's exclusive Territory.

On March 19, 2014, an article appeared in a Polish-language Internet magazine, stating that TVP intended to launch a new international channel, called *TVP Rozrywka [Entertainment] International* ("*TVP Entertainment*") in the United States on March 26, 2014. (*See TVP Entertainment* Action, Dkt. No. 12-19, Spanski Decl. Ex. S). The article indicated that *TVP Entertainment* would contain a number of highly popular series that are currently carried on *TVP Polonia*.

On April 11, 2014, SEI commenced the *TVP Entertainment Action* against TVP seeking, *inter alia*, a preliminary injunction preventing TVP from distributing *TVP Polonia* programs on *TVP Entertainment*, or from removing series from *TVP*

*Polonia* in order to ostensibly permit new episodes of such series to air on *TVP Entertainment.* (*See TVP Entertainment* Action, Dkt. No. 2 (Complaint), Dkt. No. 8, (Order to Show Cause), Dkt. No. 9 (Memorandum of Law in Support of Plaintiff's Motion for a Preliminary Injunction)). In its opposition papers, TVP acknowledged that it intends to discontinue at least seven series on *TVP Polonia* in order to move them to *TVP Entertainment* (*See TVP Entertainment* Action, Dkt. No. 22, Declaration of Lukasz Kardas, ¶27), and further acknowledged that the series in question are "very popular" on TVP's domestic channels (*id.* at ¶88). Nevertheless, TVP contends that, following the District Court's decision in this action, it is free to remove even indisputably popular *TVP Polonia* programming in order to move it to another channel. (*See TVP Entertainment* Action**,** Dkt. No. 21, Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a Preliminary Injunction, at 17-20).

## SUMMARY OF ARGUMENT

### A. The District Court Erred in Denying SEI Damages for Specific Episodes of *Klan* and *Plebania* That Had Not Appeared on *TVP Polonia*

The Settlement Agreement expressly prohibits TVP from authorizing the distribution, in SEI's exclusive Territory, of any channel containing **"any of the same programming**" that has ever been, or will ever be, contained in *TVP Polonia*. (*Supra* at 9). The District Court's implicit conclusion—reached with no explanation—that the term "**programming**" refers only to the specific episodes of

television programs that have aired on *TVP Polonia*, rather than the programs (or series) in their entirety, was incorrect, and reversal is required.

The term television "programming," and its root "program," is properly understood as referring to entire <u>series</u>, not individual episodes thereof, and this is particularly true in the case of ongoing, sequential serial programs such as *Klan* and *Plebania*. At worst, the correct meaning of the term "programming" is ambiguous. But the District Court never held that the Settlement Agreement was ambiguous on this point, much less did it make any factual findings or identify any extrinsic evidence supporting its apparent conclusion that the term "programming" means "episodes" and not "series." For this reason alone, at a minimum the matter should be remanded for further proceedings, so that the District Court can consider extrinsic evidence concerning the proper interpretation of the Settlement Agreement.

But in any case, because the extrinsic evidence is so one-sided, this Court can, and should, conclude as a matter of law that the Settlement Agreement precludes TVP from distributing on other channels any television <u>series</u> that have aired on *TVP Polonia*, and any episodes thereof (regardless of whether the particular episodes have aired on *TVP Polonia*), and reverse the District Court's decision to exclude individual episodes of *Klan* and *Plebania* that never aired on *TVP Polonia* from damages. Indeed, there is simply <u>no</u> extrinsic evidence in the record supporting the District Court's contrary conclusion.

By contrast, the undisputed evidence establishes—and TVP has

acknowledged—that §II.E of the Settlement Agreement was designed to insulate SEI from competition and preclude TVP from circumventing or "bypassing" SEI's exclusive rights by distributing *TVP Polonia* content under a different name. This primary purpose would be completely thwarted if TVP could circumvent SEI's exclusive rights by moving popular series from *TVP Polonia* to a new channel, which would then compete with SEI, under the guise that such new episodes do not constitute *TVP Polonia* "programming." Yet this is exactly what TVP has attempted to do—not only with respect to the television series *Klan*, but also with its new scheme to remove numerous popular programs from *TVP Polonia* in order to distribute them on a "new" channel, *TVP Rozrywka International*, that will compete directly with *TVP Polonia* in SEI's exclusive territory. That the District Court's interpretation would allow TVP to do exactly what the Settlement Agreement is designed to prevent conclusively demonstrates that the District Court's reading of the contract is incorrect.

## B. **The District Court Erred in Denying SEI's Claim for Breach of the Covenant of Good Faith and Fair Dealing**

Compounding its error, the District Court also incorrectly held that TVP's removal of *Klan* from *TVP Polonia* did not violate the covenant of good faith and fair dealing implied in every contract. However, TVP's conduct—removing a highly popular *TVP Polonia* program in order to ostensibly render it "non-*TVP Polonia* programming" that can be broadcast on a competing channel—is precisely the type of

chicanery and evasion of the spirit of a bargain that the covenant of good faith and fair dealing is designed to prevent.

In holding to the contrary, the District Court made several critical errors of law that require reversal upon this Court's *de novo* review.  First, the District Court held that TVP's "motive" in removing *Klan* was irrelevant.  In fact, the entire purpose of the covenant of good faith and fair dealing is to preclude bad-faith conduct designed to circumvent the parties' agreement; as this Court has repeatedly recognized, motive is at the heart of this inquiry.  *See, e.g., Tractebel Energy Mktg, Inc. v. AEP Power Mktg. Inc.*, 487 F.3d 89, 100 n.8 (2d Cir. 2007); *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1577 (2d Cir. 1994).  Second, the District Court held that, because TVP retained discretion under the Agreements to make programming changes to *TVP Polonia*, the removal of *Klan* could not have violated SEI's "reasonable expectations."  This simply ignores that "[e]ven when a contract confers decision-making power on a single party, the resulting discretion is nevertheless subject to an obligation that it be exercised in good faith," *Travellers Int'l*, 41 F.3d at 1575, and that, while the parties' Agreements permitted TVP to implement changes to *TVP Polonia* based on a good-faith determination as to what is best for the channel, nothing in the Agreements gives TVP the express right to <u>move</u> popular programming to a competing channel, to SEI's and *TVP Polonia*'s detriment.

While the District Court also stated that TVP presented evidence that the decision to remove *Klan* was part of a regular "programming" review due to

"declining viewership," the District Court's decision still must be reversed because the legal errors set forth above taint and infect its ultimate conclusion that TVP's conduct did not violate the covenant of good faith and fair dealing. Further, any finding that TVP removed *Klan* due to "low ratings" rather than in order to facilitate the licensing of that program to Polvision must be reversed even under the "clear error" standard of review for factual findings. Not only did the District Court ignore that TVP did not produce a single contemporaneous document supporting its claim that *Klan* was removed as part of a "regular programming review" due to "low ratings"—as well as ignore the abundant, indisputable documentary evidence that *Klan* was removed in an effort to placate Polvision—the District Court completely . misconstrued the only "evidence" that TVP presented in support of its defense that *Klan* was removed for good-faith reasons. In particular, in crediting TVP's claim that *Klan* had declining ratings "in Poland," the District Court failed to appreciate the critical difference between domestic Polish ratings for the *TVP Polonia* channel (which are meaningless, because people living in Poland watch popular series such as *Klan* when they first air on TVP's flagship domestic channels, not re-runs on *TVP Polonia*), and ratings on TVP's flagship domestic channels, which are the true measure of a program's popularity, and on which *Klan* continues to receive high ratings to this day.

Finally, perhaps the clearest illustration that the District Court's rulings were in error is the use that TVP now seeks to make of those rulings. TVP has publicly

announced plans to remove almost all of the most popular television series from *TVP Polonia* in order to place them on a "new," competing international channel.  Such a scheme flies in the face of the reasonable expectations of the parties, and plainly seeks to undermine §II.E of the Settlement Agreement; yet, according to TVP, following the District Court's ruling in this case, this new scheme is perfectly permissible.  To the extent the Final Order authorizes such expressly bad-faith conduct, it must be reversed.

## STANDARD OF REVIEW

On appeal from a judgment after a bench trial, a district court's conclusions of law are reviewed *de novo*, and its findings of fact are reviewed for clear error.  *See, e.g., Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 n.2 (2d Cir. 2013).  For mixed questions of law and fact, the standard of review is "*de novo* to the extent that the alleged error is in the misunderstanding of a legal standard and clear error to the extent the alleged error is in a factual determination."  *Diebold Found., Inc. v. Comm'r*, 736 F.3d 172, 174 (2d Cir. 2013).  "Contract interpretation is a question of law that [this Court reviews] *de novo*."  *Fishoff v. Coty Inc.*, 634 F.3d 647, 652 (2d Cir. 2010); *see also, e.g., VRG Linhas Aereas S.A. v. MatlinPatterson Global Opportunities Partners II*, 717 F.3d 322, 325 (2d Cir. 2013); *NES Fin. Corp. v. JPMorgan Chase Bank, N.A.*, No. 13-7-cv, 556 F. App'x 12, 2014 U.S. App. LEXIS 3339, at *6 (2d Cir. Feb. 20, 2014).

# ARGUMENT

## I.    The District Court Erred in Excluding From Damages Specific Episodes of *Klan* and *Plebania* That Had Not Appeared on *TVP Polonia*

The Settlement Agreement expressly provides that "SEI is and shall remain the exclusive distributor of *TV Polonia* . . . programming content in the territory of North and South America" (A-973, §II.A), and expressly prohibits TVP from distributing or authorizing:

> [A]ny other channels in North or South America that contain **any of the same programming that** is contained, **has been contained, or will be contained in . . . *TV Polonia*.**

(*Id.* §II.E) (emphasis added).  The District Court correctly found that this language unambiguously "gives SEI exclusive distribution rights to the individual shows comprising *TVP Polonia*," rejecting TVP's argument that the Agreements only entitled SEI to distribute *TVP Polonia* "as a unit of programming" and did "not give SEI distribution exclusivity to individual programs or series broadcast on *TVP Polonia*."  (SPA-3, SPA-5).

Nevertheless, the District Court denied TVP any damages for 408 episodes of *Klan* and *Plebania* that were licensed to Polvision because those specific episodes had never aired on *TVP Polonia* (the "Unaired Episodes") (SPA-11—12), even though it was undisputed that the series *Klan* and *Plebania* were included in the *TVP Polonia* channel.  Notably, the District Court offered no explanation or reasoning for its apparent determination that specific episodes were outside the scope of the

Agreements if those particular episodes never aired on *TVP Polonia*, notwithstanding that they were part of <u>series</u> that had aired on *TVP Polonia*.  However, to have reached this result, the District Court must have implicitly concluded that Settlement Agreement's prohibition on TVP's licensing of **"any of the same programming"** that had ever appeared on *TVP Polonia* applied only to <u>specific episodes</u> of *TVP Polonia* programs, rather than the programs, or series, in their entirety.

This implicit conclusion was incorrect.  The term television "programming," and its root "program," is commonly understood to refer to entire <u>series</u>, not individual episodes thereof.  This is particularly true in the case of <u>serial</u> television programs, such as *Klan* and *Plebania*.[7]  By definition, such programs involve continuing plots that unfold in sequential episode-by-episode fashion, with each episode constituting but one chapter in a whole.  *See, e.g.,* http://en.wikipedia.org/wiki/Serial_(radio_and_television).  Accordingly, the Settlement Agreement bars TVP from distributing via alternate channels within the Territory any television <u>series</u> that have aired on *TVP Polonia*, and any episodes thereof, regardless of whether the particular episodes have aired on *TVP Polonia*.

This is reinforced by the fact that Section II.E of the Settlement Agreement bars TVP from distributing on alternate channels any programming that **"will be**

---

[7] It is undisputed that *Klan* and *Plebania* are long-running, serial programs.  (*See, e.g.,* A-59 ¶4 (parties stipulate that *Klan* and *Plebania* are television "series"); A-112, ¶42 (*Klan* and *Plebania* are serial programs); A-2374 (TVP expert witness acknowledges that *Klan* is "a long-running soap opera")).

31

**contained"** in *TVP Polonia*, thus expressly encompassing future episodes of ongoing serial programs currently airing on *TVP Polonia*. Indeed, if the Settlement Agreement's exclusivity provisions do not apply to future episodes of current *TVP Polonia* programs, the phrase "will be contained" in Section II.E. is rendered meaningless. *See, e.g., JA Apparel Co. v. Abboud*, 568 F.3d 390, 405 (2d Cir. 2009) (contract should not be interpreted in manner that leaves a provision without force and effect).

Accordingly, to the extent the District Court held that the term *TVP Polonia* "programming" unambiguously refers only to individual episodes that have appeared on *TVP Polonia*, rather than entire series, the District Court erred as a matter of law. *See Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 469 (2d Cir. 2010) (determination of whether a contract is ambiguous and interpretation of unambiguous contract are matters of law subject to *de novo* review). As set forth above, the plain language of the Settlement Agreement gives SEI exclusive rights to *TVP Polonia* "programming," *i.e.*, <u>series</u> that have aired on *TVP Polonia*, and not just individual episodes thereof. To the extent the Settlement Agreement is unambiguous, it unambiguously *favors* SEI.

Even if the Settlement Agreement is ambiguous with respect to whether the term *TVP Polonia* "programming" encompasses television series in their entirety, or

only specific episodes thereof,[8] the District Court's decision to exclude the Unaired

Episodes from its damages calculation must be reversed.  Importantly, the District

Court never held that the Settlement Agreement was ambiguous on this point, much

less made any factual findings or identified any extrinsic evidence supporting its

apparent conclusion that the term "programming" means "episodes," not "series."

When a district court incorrectly determines that a contract is unambiguous,  "two

courses are open to [the Court of Appeals], depending on the circumstances." *Collins*

*v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002).  This Court may either:  (1)

resolve the ambiguity "as a matter of law if there is no extrinsic evidence to support

one party's interpretation . . . or if the extrinsic evidence is so one-sided that no

reasonable factfinder could decide contrary to one-party's interpretation," or (2)

"remand for the trial court to consider and weigh extrinsic evidence to determine

what the parties intended." *Id.* at 433.

Here, there is simply <u>no</u> extrinsic evidence in the record supporting the District

Court's apparent assumption that the term "programming" refers to individual

episodes rather than entire series.  Maria Nadolna, TVP's sole fact witness, played no

role in negotiating either the Agreement or the Settlement Agreement, and did not

---

[8] A contract is ambiguous where its terms could suggest "more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275-76 (2d Cir. 2000) (citation omitted).

even speak to those involved in the negotiations.  (*Supra* at 19).  In fact, Ms. Nadolna testified that she did not know what the term "programming content" meant as used in the Settlement Agreement (A-652—54; A-334,  p. 315:12-21), and when asked whether TVP could produce ten episodes of a series, licensing half of them to SEI and half to Polvision, responded:  "I don't know."  (A-334, p. 316:24-317:20; *see also* A-62—63).  While TVP cursorily argued that "[n]othing in the parties' agreements gives SEI rights to all episodes of a series that had appeared on *TVP Polonia* when the individual episodes at issue have never appeared on *TVP Polonia*" (A-3167, ¶38), TVP cited no extrinsic evidence in support of this argument.

On the other hand, ample extrinsic evidence supports that the Settlement Agreement bars TVP from distributing <u>any</u> episodes of *TVP Polonia* series in SEI's exclusive territory, even if the specific episodes at issue had not aired on *TVP Polonia*.  First and foremost, the undisputed evidence establishes—and TVP has acknowledged—that §II.E of the Settlement Agreement was designed to preclude TVP from circumventing or "bypassing" SEI's exclusive rights by distributing *TVP Polonia* programming content under a different name, thus competing with SEI using SEI's own programming.  (*Supra* at 10-11).  This overriding purpose would be completely thwarted if TVP could circumvent SEI's exclusive rights through the simple expedient of removing popular series from *TVP Polonia* for the purpose of moving them to a new channel, which would then compete with SEI, under the guise that episodes of such series no longer constitute *TVP Polonia* "programming."  *See,*

34

*e.g., In re Delta Air Lines, Inc.*, 608 F.3d 139, 146 (2d Cir. 2010) (in construing contract, courts should consider "the purposes of the parties, and all other relevant circumstances"); *Mailer v. RKO Teleradio Pictures, Inc.*, 332 F.2d 747, 749 (2d Cir. 1964) (contracts may not be interpreted "so as to frustrate and distort the intentions of the parties"); *Aron v. Gillman*, 309 N.Y. 157, 163 (1955) (in construing contract, courts should "give due consideration to the circumstances surrounding its execution [and] to the purpose of the parties in making the contract. . . .").

Yet this is <u>exactly</u> what TVP has attempted to do, not only with respect to the television series *Klan*, but also with its new scheme to remove numerous popular programs from *TVP Polonia* in order to distribute them on a "new" channel, *TVP Rozrywka International*, that will compete directly with *TVP Polonia* in the Territory. (*Supra* at 23-24. In fact, in the *TVP Entertainment* Action, TVP has expressly relied on the District Court's interpretation of §II.E of the Settlement Agreement as authorizing such conduct. (*See TVP Entertainment* Action**,** Dkt. No. 21, Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a Preliminary Injunction, at 16). That the District Court's interpretation would allow TVP to engage in the very behavior that the Settlement Agreement was designed to prevent is conclusive evidence that the District Court's reading of the contract was incorrect. *See, e.g., In re Delta Air Lines*, 608 F.3d at 147 (rejecting bankruptcy court's interpretation of contractual provision which "far from reflecting the intentions of the contracting parties, was virtually certain to defeat those intentions"); *Compagnie*

*Financiere De Cic et de L'Union Europeenee v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 160-62 (2d Cir. 2000) (Sotomayor, J.) (reversing district court and ordering summary judgment in favor of plaintiff where extrinsic evidence concerning the purpose of the agreement supported plaintiff's interpretation of the contract, and defendant's interpretation would frustrate the underlying purpose).

In addition, if TVP is permitted to remove popular programming from *TVP Polonia* in order to air it on a competing channel, SEI will be in an even worse competitive position than if TVP airs such programming on a competing channel while continuing to carry it on *TVP Polonia*. It makes no sense to conclude, as the District Court did, that §II.E precludes TVP from harming SEI by competing with it using its own programming, but incentivizes TVP to cause even greater harm by depriving SEI of popular programming and then competing with it using that programming. *See Deutsche Alt-A Secs. Mortg. Loan Trust v. DB Structured Prods., Inc.*, 958 F. Supp. 2d 488, 504 (S.D.N.Y. 2013) (rejecting contractual interpretation that would "perversely incentivize[]" defendant to remove loans from its books in order to evade its repurchase obligations).

The evidence also conclusively establishes that, almost immediately after entering into its August 31, 2009 license agreement with Polvision, TVP realized that it had breached the Settlement Agreement by licensing, *inter alia*, the *Klan* and *Plebania* series, demanded that Polvision cease distributing those series, and attempted to placate Polvision by offering alternative programming. (*Supra* at 12-

36

16).  Indeed, Piotr Lenarczyk, the TVP employee responsible for negotiating the Settlement Agreement, acknowledged that TVP realized the license to Polvision breached SEI's contractual exclusivity, and that TVP thus instructed Polvision to cease broadcasting any serials that had appeared on *TVP Polonia*.  (A-97, ¶¶12-13).

TVP's reaction reflects its recognition that the Agreements prohibited TVP from licensing to third parties any <u>series</u>, that had previously aired on *TVP Polonia*, and not just individual episodes that had aired on the channel.  For example, in a May 18, 2010 internal memorandum, TVP explored the possibility of deferring certain <u>series</u> that had not yet been aired on *TVP Polonia*, but did not even broach the idea of deferring individual episodes of series that had *already* aired on the channel.  (A-1042—43).  It was only after Polvision repeatedly rejected TVP's offers of replacement content (which did not include any episodes of *Plebania* or *Klan*), and threatened to sue TVP for breaching the August 31, 2009 license agreement, that TVP finally proposed to allow Polvision to air individual episodes of *Klan* and *Plebania* that had not yet appeared on *TVP Polonia*.  (*Supra* at 13-16).  This sequence of events demonstrates that TVP itself initially recognized that all series that had appeared on *TVP Polonia*, including *Klan* and *Plebania*, were SEI's exclusive content.

Because the "extrinsic evidence is so one-sided" (*supra* at 33), this Court can, and should, conclude, as a matter of law, that the Settlement Agreement precludes TVP from distributing on other channels any television <u>series</u> that have aired on *TVP*

*Polonia*, and any episodes thereof (regardless of whether the particular episodes have aired on *TVP Polonia*), and reverse the District Court's decision to exclude individual episodes of *Klan* and *Plebania* that never aired on *TVP Polonia* from damages. *See Compagnie Financiere De Cic*, 232 F.3d at 160-62 (Sotomayor, J.) (reversing district court and directing judgment in favor of plaintiff based on one-sided extrinsic evidence supporting plaintiff's interpretation of the contract). Even if this Court determines that there is insufficient extrinsic evidence to resolve the interpretation of §II.E of the Settlement Agreement as a matter of law, the District Court's decision must be reversed, and the matter remanded for the District Court to consider and weigh the extrinsic evidence (*supra* at 33), and potentially to consider new extrinsic evidence concerning the parties' intentions. *See NES Fin. Corp.*, 2014 U.S. App. LEXIS 3339, at *8 (2d Cir. Feb. 20, 2014) (vacating district court's interpretation of contract after concluding that contractual provision was ambiguous, and stating that "[o]n remand, the district court may consider whether to permit the parties to submit additional extrinsic evidence in support of their positions") (internal quotation omitted).

## II. The District Court Erred in Denying SEI's Claim For Breach of the Covenant of Good Faith and Fair Dealing

"Under New York law, the implied covenant of good faith and fair dealing inheres in every contract." *Travellers Int'l, A.G.*, 41 F.3d at 1575. Encompassed within the implied obligation of each promisor to exercise good faith are "any

promises which a reasonable person in the position of the promisee would be justified in understanding were included." *Rowe v. Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 69 (1978) (quotation omitted). "This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Fishoff v. COTY Inc.*, 634 F.3d 647, 653 (2d Cir. 2011) (citation omitted); *see also, e.g., Bank of China v. Chan*, 937 F.2d 780, 789 (2d Cir. 1991) ("A party's actions may implicate the implied covenant of good faith when it acts so directly to impair the value of the contract for another party that it may be assumed that they are inconsistent with the intent of the parties."). In other words, the covenant of good faith and fair dealing protects against conduct that seeks to evade "the spirit of the bargain," if not the letter of the contract. *Leeward Constr. Co. v. Am. University of Antigua*, 12 Civ. 6280, 2013 U.S. Dist. LEXIS 43550, at *14 (S.D.N.Y. Mar. 26, 2013) (quoting *Restatement (Second) of Contracts* § 205(d)); *see also Video Trip Corp. v. Lightning Video, Inc.*, 866 F.2d 50, 52 (2d Cir. 1989) ("Good faith in contracting is the obligation to preserve the spirit of the bargain rather than the letter, the adherence to substance rather than form.") (quotation omitted).[9]

---

[9] *See also, e.g., Bear, Stearns Funding, Inc. v. Interface Grp.—Nevada, Inc.*, 361 F. Supp. 2d 283, 298 (S.D.N.Y. 2005) ("[A] party may breach the implied covenant of good faith and fair dealing even if that party's conduct does not contravene the express provisions contained within the four corners of the written agreement."); *Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 407 (E.D.N.Y. 2012) ("While independent obligations beyond those stated in the contract will not be

A. **The District Court Erroneously Concluded That the Covenant of Good Faith and Fair Dealing Did Not Prevent TVP From Removing Programming From *TVP Polonia* in Order to Provide it to a Competitor**

The Settlement Agreement expressly precludes TVP from distributing, on any other channel within SEI's exclusive Territory, any programming that has ever been, or will ever be, contained in *TVP Polonia*. (*Supra* at 9). As explained *supra*, and as TVP itself has acknowledged, the purpose of this provision was to prevent TVP from competing with SEI using *TVP Polonia* content. All that TVP has done with respect to *Klan* is to attempt to manufacture a loophole in the Settlement Agreement, removing a popular *TVP Polonia* program for the sole purpose of ostensibly rendering it "non-*TVP Polonia* programming," which is now being broadcast on a competing channel in SEI's own Territory.

This is precisely the type of chicanery that the covenant of good faith is designed to prevent. *See Restatement (Second) of Contracts* § 205, illus. 1 (1981) (duty of good faith and fair dealing precludes party A, who contracts to buy all of his oil products from party B, to then form a new corporation to purchase A's oil from

---

inferred, a plaintiff adequately states an implied covenant claim by alleging conduct that subverts the contract's purpose without violating its express terms) (quotation omitted); *Eaves v. Designs for Finance, Inc.*, 785 F. Supp. 2d 229, 258 n.22 (S.D.N.Y. 2011) ("[A] party may be in breach of an implied duty of good faith and fair dealing, even if it is not in breach of its express contractual obligations, when it exercises a contractual right as part of a scheme to . . . deprive the other party of the fruit of the bargain."); *Don King Prods., Inc. v. Douglas*, 742 F. Supp. 741, 767 (S.D.N.Y. 1990) ("The covenant is violated when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other of the right to receive the benefits under their agreement.").

B's competitor: "The new arrangement may be found to be a subterfuge or evasion and a breach of contract by A."). For example, in *Empresas Cablevision, S.A.B. de C.V. v. JP Morgan Chase Bank, N.A.*, 680 F. Supp. 2d 625 (S.D.N.Y. 2010), *aff'd in relevant part and remanded on other grounds*, 381 F. App'x 117 (2d Cir. 2010), the Court precluded a defendant from circumventing an agreement's anti-assignment provision by entering into an agreement with a third party which, "while it took the form of a participation, gave [the third party] much of the substance of the forbidden assignment and purposely undercut what [defendant] knew the assignment veto was designed to prevent." *Id.* at 631-32. While the proposed "participation" was "technically consistent" with the parties' contract and did not violate any "express restriction," the Court nevertheless recognized that "[s]uch and end-run, if not a downright sham, is not permissible if, as here, it does away with the 'fruits' of the contract." *Id.* at 632. Here, as in *Empresas Cablevision*, any effort to remove programs from *TVP Polonia* in order to allow them to be aired on a competing channel is not just an "end-run" around Section II.E of the Settlement Agreement; it is a downright sham.

Nevertheless, in ruling that TVP's removal of *Klan* from *TVP Polonia* did not violate the covenant of good faith and fair dealing, the District Court stated that "the fact that TVP later sold the extracted episodes of *Klan* to Polvision is of no consequence since TVP was within its rights under the 1994 Contract and did not violate any presumed or reasonable expectations thereunder." (SPA-22). The

District Court further held that TVP's <u>motives</u> in removing *Klan* were legally

irrelevant:  "[E]ven presuming TVP's motives were retaliatory in nature, courts have

found the implied covenant regulates parties' conduct, not their motives."  (*Id.*)

(citing *Gaia House Mezz. LLC v. State St. Bank & Trust Co.*, 720 F.3d 84, 93 (2d Cir.

2013).  Both of these conclusions are incorrect as a matter of law, and the District

Court's decision should be reversed on *de novo* review.

 <u>First</u>, the District Court's conclusion that motive is irrelevant to a claim for

breach of the covenant of good faith is simply incorrect.  As set forth *supra* at 38-39,

the entire purpose of the covenant of good faith and fair dealing is to preclude

conduct that, while not violating any express contractual terms, is intended to

circumvent the agreement and injure one party's right to receive the fruits of the

contract.  A defendant's motive is at the heart of this inquiry.  *See, e.g., Tractebel*

*Energy Mktg., Inc. v. AEP Power Mktg. Inc.*, 487 F.3d 89, 100 n.8 (2d Cir. 2007)

("The question here is not whether AEP breached the express terms of the contract,

but whether AEP acted in good faith; that is an issue entirely tied to motive.");

*Travellers Int'l*, 41 F.3d at 1577 (defendant breached implied covenant of good faith

and fair dealing where its promotional efforts "were not guided by valid, good faith

business judgments, but were rather based on [an] improper motive"); *Polotti v.*

*Flemming*, 277 F.2d 864, 868 (2d Cir. 1960) (Under New York law, "'good faith'

connotes an actual state of mind—a state of mind motivated by proper motive.'").

Second, and relatedly, the District Court was also incorrect in concluding that because the Agreement "leaves control over programming to TVP's sole discretion," TVP's removal of *Klan* (for purposes of licensing the program to Polvision) was not "a violation of what SEI could have reasonably expected."  (SPA-21).  This simply ignores that "[e]ven when a contract confers decision-making power on a single party, the resulting discretion is nevertheless subject to an obligation that it be exercised in good faith."  *Travellers Int'l*, 41 F.3d at 1575; *see also, e.g., Carvel Corp. v. Diversified Mgmt. Grp., Inc.*, 930 F.2d 228, 231 (2d Cir. 1991).  Here, while the Agreement provided that TVP reserved the right to "introduce changes" to *TVP Polonia* programming (A-960, §9.4), nothing in the Agreements gives TVP the express right to <u>move</u> programming from *TVP Polonia* to a competing channel.  Thus, while SEI certainly could have reasonably expected that TVP might implement programming changes to *TVP Polonia* based on a good-faith determination as to what is best for the channel (even if SEI might disagree), SEI could not have anticipated that TVP would intentionally harm the channel by removing a popular program in order to provide it to a competing channel, thus skirting the Settlement Agreement's express exclusivity provisions.

Indeed, as this Court has recognized, where, as here, parties enter into a profit-sharing agreement, a plaintiff has a reasonable expectation that the defendants' actions will be guided by a desire to maximize profits from the venture.  When the defendant instead knowingly takes action that will diminish the value of the venture

in furtherance of an ulterior purpose, a claim for breach of the covenant of good faith will lie.  *See Travellers Int'l*, 41 F.3d at 1577; *see also Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 408-09 (E.D.N.Y. 2012) (where parties had entered into profit-sharing arrangement such that parties had nothing to gain if either of them failed to perform, the agreements "[did] not make contractual sense without the implication" that defendant could not create a competing program by which it could "divert revenue that would otherwise be payable" to plaintiff).

This Court's decision in *Travellers Int'l* is directly on point.  There, the parties had entered into a joint venture agreement involving escorted foreign tours.  *Id.* at 1571.  The defendant, unhappy with the bargain it had struck, attempted to terminate the joint venture agreement and take the program "in house."  After being preliminarily enjoined from terminating its agreement with the plaintiff—just as TVP unsuccessfully attempted to terminate its agreement with SEI (*supra* at 9-10)—the defendant attempted to undermine its joint venture with the plaintiff by significantly reducing its promotional efforts in connection with same.  *Id.* at 1572-73.  The district court concluded, and the Second Circuit agreed, that the defendant had breached the implied duty of good faith and fair dealing by failing to take sufficient promotional efforts, concluding that the nature and extent of defendant's efforts "did not reflect good faith business judgments" but "were rather based on the improper motive of attempting to eliminate" the plaintiff as a middleman in order to maximize its own profits.  *Id.* at 1576-77.  In so ruling, the Second Circuit <u>rejected</u> the defendant's

argument that it had the "sole discretion" under the contract to determine the level of promotion, noting that such discretion must still be exercised in good faith. *Id.* at 1575-76.

Here, as in *Travellers*, TVP's desire to remove *Klan* was motivated not by a good faith desire to do what is best for *TVP Polonia*, but for the improper purpose of circumventing SEI's exclusive rights and licensing *TVP Polonia* programming to a competitor. Indeed, the District Court recognized that TVP breached the Settlement Agreement by licensing *TVP Polonia* content to Polvision; it makes no sense that TVP can escape liability for that breach through the expedient of later "removing" the content from *TVP Polonia*—ostensibly rendering it "non-*TVP Polonia* programming"—and that such conduct can be said to be within SEI's "reasonable expectations."

In holding to the contrary, the District Court relied on *Gaia House* for the proposition that, since the Agreements leave control over programming to TVP's discretion, "it cannot fairly be presumed that TVP must consult SEI or receive SEI's approval before changing content, as such an obligation would directly contradict the terms of the agreement." (SPA-21). But SEI has never argued that TVP was required to "consult" with SEI or receive its approval before changing content; SEI argues only that TVP's decisions to change content must be made in good faith, and not for the improper purpose of depriving SEI of the fruits of the Agreements by licensing what would otherwise be *TVP Polonia* content to SEI's competitors. Nor

45

would such a good faith obligation "directly contradict the terms of the agreement," as nothing in the Agreements gives TVP the express right to move *TVP Polonia* programming content to competing channels.

*Gaia House* is wholly distinguishable. In that case, the parties' agreement entitled a lender to receive "Accrued Interest" unless certain conditions precedent occurred. 720 F.3d at 88. In those circumstances, this Court recognized that the covenant of good faith could not be read to require the lender to <u>waive</u> its express right to receive accrued interest payments under the contract despite the failure of the conditions precedent. Such an obligation would have been directly inconsistent with the contract's terms, and the lender could not have violated the plaintiff's "reasonable expectations" by demanding a payment to which it was contractually entitled. Here, by contrast, nothing in the Agreements gives TVP the express right to move *TVP Polonia* programming to SEI's competitor, and such conduct runs afoul of the entire spirit of the Agreements.[10]

Finally, perhaps the best illustration that the District Court's ruling was in error is the use that TVP now seeks to make of that ruling. TVP is now attempting to remove almost virtually <u>all</u> of the most popular television series from *TVP Polonia*

---

[10] The District Court's statement, relying on *Gaia House*, that it did not matter if "TVP's motives for removing *Klan* were retaliatory in nature" (SPA-22) also misconstrues SEI's argument. SEI does not merely contend that TVP exercised an express contract right in order to "retaliate" due to some unhappiness with SEI. Rather, SEI contends that TVP removed *Klan* in an effort to circumvent the Settlement Agreement's exclusivity provisions.

for the express and undisputed purpose of placing those series on a new, competing channel that TVP itself has launched, claiming that this is perfectly permissible in light of the District Court's ruling. (*Supra* at 24). Such a scheme flies in the face of the reasonable expectations of the parties, and plainly seeks to undermine §II.E of the Settlement Agreement—which, as SEI has acknowledged, is intended to preclude TVP from circumventing SEI's exclusive rights by distributing *TVP Polonia* programming on a competing channel. (*Supra* at 11). There can be no reasonable doubt that, unhappy with the deal that it struck, TVP is now attempting to evade and destroy SEI's right to receive the benefits of its contract. To the extent that the District Court's ruling authorizes such behavior, it is incorrect as a matter of law, and must be reversed.

B.  **The Evidence Demonstrates That SEI Removed *Klan* in Order to Placate Polvision, Not As Part of a Regular "Programming Review"**

In concluding that TVP's removal of *Klan* did not run afoul of the covenant of good faith, the District Court also stated that "TVP presented evidence that the decision to remove *Klan* was part of a regular quarterly programming review . . . because *Klan* had declining viewership in Poland among a target audience." (SPA-21).

First, even if this Court defers to this statement as a "factual finding," the District Court's decision still must be dismissed because the legal errors set forth *supra* at 41-47 taint and infect the District Court's ultimate conclusion that TVP's

47

conduct did not violate the covenant of good faith and fair dealing.  *See, e.g., Southside Fair Housing Comm. v. City of New York*, 928 F.2d 1336, 1343 (2d Cir. 1991) (deference given to district court's factual findings "does not inhibit an appellate court's power to correct errors of law, including those that may infect a so-called mixed finding of law and fact, or a finding of fact that is predicated on a misunderstanding of the governing rule of law.") (quotation omitted); *New York v. Operation Rescue Nat'l*, 273 F.3d 184, 193 (2d Cir. 2001).  Here, the District Court did not separate out its findings of fact and legal conclusions.  Because it is impossible to determine whether the District Court would have reached the same ultimate conclusion absent the aforementioned legal errors, at a minimum the case should be remanded for further proceedings.

<u>Second</u>, in any event, to the extent the District Court determined that TVP removed *Klan* as part of a "regular programming review" due to "declining viewership"—rather than to facilitate the licensing of that program to Polvision—this factual finding must be reversed even under the clear error standard of review.

"[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (internal quotation marks omitted); *Mar Oil, S.A. v. Morrissey*, 982 F.2d 830, 842 (2d Cir. 1993) (district court's implicit factual findings were "so improbable that, on the basis of all the evidence, we are left with the firm

conviction that a mistake was made"); *see also Carr v. Allison Gas Turbine Div.*, *Gen'l Motors Corp.*, 32 F.3d 1007, 1008, 1011 (7th Cir. 1994) (review of factual findings is deferential but "not abject," and factual finding was clearly erroneous where it was "incredible on the admitted facts") (Posner, J.).

The Second Circuit has "found a district court's factual findings to be clearly erroneous where the court has failed to synthesize the evidence in a manner that accounts for conflicting evidence or the gaps in a party's evidentiary presentation." *Doe v. Menefee*, 391 F.3d 147, 164 (2d Cir. 2004) (Sotomayor, J.).  Accordingly, this Court has "reversed factual findings where the trial court incorrectly assessed the probative value of various pieces of evidence, leading it to rely on speculation, . . . where the court failed to weigh all of the relevant evidence before making its factual findings," and where the court's findings "were founded on factual inferences that the evidence did not permit."  *Id.* (citing, *inter alia*, *United States v. Rizzo*, 349 F.3d 94, 100-02 (2d Cir. 2003); *Ortega v. Duncan*, 333 F.3d 102, 107 (2d Cir. 2003); and *Krizek v. CIGNA Grp. Ins.*, 345 F.3d 91, 100-01 (2d Cir. 2003)).

Here, while the District Court stated that TVP "presented evidence that the decision to remove *Klan* was part of a regular quarterly programming review"—citing Ms. Nadolna's declaration (SPA-21; A-90—91, ¶¶93-102)—the District Court ignored that TVP did not produce, during trial or discovery, a single contemporaneous document suggesting that this "regular programming review" ever occurred, much less that it was the basis for the decision to remove *Klan*.  This

despite the fact that SEI <u>repeatedly</u> requested all documents concerning the decision to remove *Klan* during discovery.  (*Supra* at 20-21).  The District Court failed to even address, much less synthesize, this troublesome (and inexplicable) evidentiary gap.  *See United States v. Candelaria-Silva*, 714 F.3d 651, 656 (2d Cir. 2013) (reversing factual finding reached by District Court "without addressing troublesome evidentiary gaps"); *see also In re: Rowanoak Corp.*, 344 F.3d 126, 131-33 (1st Cir. 2003) (reversing district court and finding that bankruptcy court correctly determined that lack of documentary evidence could be used against appellee).

Further, the District Court misconstrued the only "evidence" that TVP presented in support of its defense that *Klan* was removed for good-faith reasons.  As explained *supra* at 21, Ms. Nadolna's declaration and the accompanying chart only purported to show that *Klan* had low ratings on the *TVP Polonia* channel <u>within Poland</u>.  However, ratings on the *TVP Polonia* channel <u>within Poland</u> are meaningless, as *TVP Polonia* is an international channel directed to Poles living abroad.  (*See supra* at 21-22).  As TVP itself has acknowledged, people living in Poland watch popular series such as *Klan* when they first air on TVP's flagship domestic channels, rather than re-runs on *TVP Polonia*.  (*Supra* at 21).  In accepting that *Klan* "had declining viewership in Poland among a target audience," the District Court failed to grasp the difference between (irrelevant) viewership in Poland on the *TVP Polonia* channel, and highly relevant viewership on TVP's domestic channels— which TVP notably failed to provide.  This failure to properly construe critical

evidence alone requires a finding of clear error.  *See Metzen v. United States*, 19 F.3d 795, 798 (2d Cir. 1994) (factual findings "clearly erroneous because the court has confused concerns about a '*low-calorie*' diet with concerns about a '*low-cholesterol*' or '*cholesterol-reducing*' diet," and "[t]his confusion taints the entire reasoning of the opinion").

The District Court compounded its misreading of TVP's irrelevant "ratings" evidence by completely discounting or ignoring relevant evidence establishing *Klan*'s popularity, including the testimony of TVP's own expert conceding that, at the time the current lawsuit was instituted, *Klan* continued to be one of the most popular shows in Poland.  (A-796—97).  The District Court also discounted evidence from an Internet periodical that, during its most recent season, premiere episodes of *Klan* aired on TVP's flagship domestic channel *TVP1* won their time slot, garnering 23.11% of all viewers (A-1999),[11] stating that this evidence was from after *Klan* was removed from *TVP Polonia*, and was "taken from a Polish website without explanation as to the site's accuracy and reliability."  (SPA-21).[12]  However, the

---

[11] In contrast to the 23.11% share of viewers that *Klan* gathered in *TVP1*, TVP's purported ratings exhibit indicates that *Klan*'s domestic viewership on *TVP Polonia* ranged between .4 and .61% (A-2322), further demonstrating the irrelevance of domestic *TVP Polonia* ratings in assessing the true popularity of a show within Poland.

[12] Courts that have considered the issue have recognized that printouts from Internet periodicals, such as the one demonstrating *Klan*'s popularity in Poland, are self-authenticating pursuant to Federal Rule of Civil Procedure 902(6).  *See Nguyen v.*

District failed to recognize that ratings on *TVP1* are a far better indicator of *Klan*'s popularity in Poland than ratings of *TVP Polonia* repeats, and that original ratings information is in the <u>exclusive possession of TVP</u>, yet TVP notably failed to present relevant information concerning *Klan*'s domestic television ratings, either at trial or during discovery.

Finally, the District Court committed clear error in accepting TVP's contention—unsupported by any contemporaneous documents—that it made the decision to remove *Klan* in May 2010 as part of a regular "programming review," while simply ignoring the abundant, indisputable documentary evidence that *Klan* was removed in an effort to placate Polvision.  As set forth *supra* at 11-16, the uncontroverted evidence demonstrates that, shortly after entering into the Settlement Agreement with SEI, between November 28, 2009 and June 25, 2010 (1) TVP first instructed Polvision to receive SEI's consent to broadcast, *inter alia*, *Klan*; (2) when this was unsuccessful, TVP attempted to terminate its agreement with Polvision, and demanded that Polvision cease distributing and return all episodes of *Klan*; (3) TVP repeatedly attempted to placate Polvision by offering it alternate programming that <u>did not include episodes of *Klan*</u>; (4) Ms. Nadolna requested that the director of *TVP Polonia* withhold certain series from *TVP Polonia* in order to increase the number of "alternate" series that TVP could offer; and (5) Polvision repeatedly rejected TVP's

---

*Radient Pharms. Corp.*, 946 F. Supp. 2d 1025, 1031-31 (C.D. Cal. 2013); *Ciampi v. City of Palo Alto*, 790 F. Supp. 2d 1077, 1091-92 (N.D. Cal. 2011).

offers of replacement programming, stated that it would hold TVP to its obligations under the licensing agreement, and threatened to sue TVP if it did not comply. It was only on July 8, 2010, after all else had failed, that TVP included episodes of *Klan* among its "replacement" programming, and *Klan* was removed from *TVP Polonia* effective the fall of 2010. (*Supra* at 15-16). The District Court did not even mention this evidence in determining that TVP did not violate the covenant of good faith and fair dealing. *See United States v. Cerna*, 603 F.3d 32, 39-40 (2d Cir. 2010) (reversing district court's factual findings for failure to "synthesize [conflicting] evidence" where district court failed to explain how it resolved the apparent conflict).

There is only one rational conclusion to be drawn from the indisputable documentary evidence—that TVP ultimately decided to remove *Klan* from *TVP Polonia* in connection with its efforts to settle its dispute with Polvision. If TVP had truly made the decision to remove *Klan* in May 2010, not only would there be some contemporaneous documentary evidence of this "fact," but TVP would have included episodes of *Klan* in its offers of "alternate programming" well before July 8, 2010.

By simply ignoring the indisputable documentary evidence supporting SEI's position, as well as the lack of documentary evidence supporting TVP's contentions, the District Court " has failed to synthesize the evidence in a manner that accounts for conflicting evidence or the gaps in a party's evidentiary presentation." *Doe*, 391 F.3d at 164 (2d Cir. 2004). On review of the entire evidence, this Court will be left with a "definite and firm conviction" that the District Court erred in accepting TVP's

unsupported contention that it removed *Klan* as part of a "regular programming review," for reasons having nothing to do with its disputes with Polvision and TVP. Accordingly, the District Court's determination must be reversed under the clear error standard of review.

## CONCLUSION

For the reasons stated herein, SEI respectfully requests that the Court

1) Reverse the District Court's Final Order to the extent that it excluded from its award of damages those damages resulting from the carrying of episodes of *Klan* and *Plebania* on Polvision, where the specific episodes in question had never aired on *TVP Polonia*, and remanding for a further determination on damages and/or additional proceedings, if necessary; and/or

2) Hold that the District Court erred in concluding that TVP did not violate the covenant of good faith and fair dealing by removing the long-running television program *Klan* from *TVP Polonia* in order to license future episodes of the program to a third party, and either (i) direct the District Court to enter judgment in favor of SEI, or (ii) remand this matter for further proceedings in accordance with the above.

Dated:      New York, New York
            July 15, 2014

                        LOEB & LOEB LLP


                        By:   */s/ Jonathan Zavin*
                            Jonathan Zavin
                            Jonathan Neil Strauss
                            John Piskora
                            Michael Barnett
                            345 Park Avenue
                            New York, New York 10154-1895
                            (212) 407-4000

                            *Attorneys for Plaintiff-Appellant Spanski*
                            *Enterprises, Inc.*

## CERTIFICATION OF COMPLIANCE PURSUANT TO
## <u>FEDERAL RULES OF APPELLATE PROCEDURE 32(a)(7)(C)</u>

The foregoing brief was generated on a computer.  A proportionally spaced typeface was used, as follows:

      Name of typeface:  Times New Roman

      Point Size:  14-point

      Line Spacing:  Double

      Margins:  One (1) inch on all sides

The total number of words in the brief, according to the word count on the word processing program utilized, inclusive of point headings and footnotes and exclusive of pages containing the table of contents, table of authorities, proof of service, certificate of compliance, or any authorized addendum containing statutes, rules and regulations, etc. is 13,767.

Dated:     New York, New York
         July 15, 2014

                  */s/ Jonathan Strauss*
                  Jonathan Neil Strauss

NY1271621.15

56